**Chloree VADEN, d/b/a Ree's Confectioneries, Plaintiff-Appellant,**

**v.**

**VILLAGE OF MAYWOOD, ILLINOIS, a municipal corporation, et al., Defendants-Appellees.**

No. 86–1134.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 5, 1986.

Decided Jan. 7, 1987.

Malcolm S. Kamin, Arvey, Hodes, Costello & Burman, Chicago, Ill., for plaintiff-appellant.

Peter M. Rosenthal, Ancel, Glink, Diamond, Murphy & Cope, P.C., Chicago, Ill., for defendants-appellees.

Before FLAUM and EASTERBROOK, Circuit Judges and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

Plaintiff-appellant Chloree Vaden owns and operates a mobile food vending business in the Village of Maywood, Illinois. When the Village enacted ordinances restricting the hours and manner of her sales, Vaden brought an action against the Village and several of its officials, alleging a violation of her due process and equal protection rights, and seeking declaratory, injunctive and monetary relief. The district court dismissed Vaden's amended complaint for failure to state a claim. We affirm.

## I

In reviewing the dismissal of a complaint for failure to state a claim, we must accept as true all well-pleaded factual allegations in the complaint. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Ashbrook v. Hoffman,* 617 F.2d 474, 475 (7th Cir.1980). The dismissal can be affirmed only if it appears beyond doubt that the plaintiff can prove no set of facts entitling her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Ellsworth,* 774 F.2d at 184. At the same time, we are not required to accept legal conclusions that may be alleged in the complaint. *Reichenberger v. Pritchard,* 660 F.2d 280, 282 (7th Cir.1981). The relevant well-pleaded facts contained in Vaden's amended complaint are as follows.

In 1979, the Village issued Vaden a mobile food vending license which she has renewed on a yearly basis. Thereafter, Vaden sold soft drinks, candy, and other food items from her truck, primarily to school children. This vending business has been Vaden's sole source of income.

Vaden claims that shortly after she obtained her license, various Village officials began to interfere with her business. On several occasions, they asked her to change the location of her vending business. Vaden complied with each request. In January 1984, when Vaden sought to renew her vendor's license, the Village Code Enforcement Director for the first time refused to issue a renewal license until Vaden produced a certificate of registration under the Illinois Retailers' Occupation Tax Act, Ill. Ann.Stat. ch. 120, ¶ 441a (Smith-Hurd 1983). In addition, the Code Enforcement Director refused to perform the necessary inspection of Vaden's truck until Vaden presented the certificate. As a result, Vaden did not receive a renewal license for several months.

In January 1984, Vaden's business was severely restricted when the Board of Village Trustees amended the Village ordinance governing mobile food vendors as follows:

Mobile food dispenser vehicles shall not be operated in the Village between 8:00 a.m. and 4:00 p.m. on any day between August 25 and June 30 when a public elementary or public secondary school operated in a school district encompassing any part of the Village is open, provided that the school is attended by students residing within the Village.

Mobile food dispenser vehicles while operating in any residential area shall move a minimum distance of one block every ten minutes.

Village of Maywood, Ill., Ordinance CO–84–3 (Jan. 26, 1984) (the "January ordinance"). Because her clientele consisted primarily of school children who purchased food at lunchtime and immediately after school, the January ordinance virtually eliminated Vaden's vending business during school months.

The Board eventually realized that the January ordinance restricted all mobile food vendors operating in the Village, regardless of location, a result the Board had not intended. Accordingly, the Board adopted a second amendment in May 1984 (the "May ordinance") to differentiate between "Mobile Food Dispenser Vehicles" (vehicles such as Vaden's) and "Mobile Catering Vehicles." The two types of vehicles are defined by the locations in which they operate. The May ordinance permits mobile catering vehicles to sell only while parked on private property in commercial, business, or industrial areas. In contrast, mobile food dispenser vehicles may sell on either public or private property in any area of the Village, whether residential, commercial, business, or industrial. Only mobile food dispenser vehicles are subject to the restrictions of the January ordinance.

In the May ordinance the Board listed the reasons for the separate licensing of the two types of vehicles:

[B]ecause of the distinctions between the way mobile catering vehicles operate and the way mobile food dispenser vehicles

operate, the corporate authorities find that mobile catering vehicles are less likely than mobile food dispenser vehicles,

(1) To cause children to be delayed going to or coming from school;

(2) To cause persons to congregate in residential areas;

(3) To cause litter; and

(4) To otherwise create a nuisance....

Village of Maywood, Ill., Ordinance CO–84–32 (May 10, 1984).

Vaden, in her amended complaint, challenged the January and May ordinances as a denial of her due process and equal protection rights under the fourteenth amendment. She alleged that the Village officials through their entire course of conduct had conspired to deprive her of the right to conduct her business, entitling her to relief under 42 U.S.C. § 1983. Finding that neither the ordinances nor any of the Village officials' acts had deprived Vaden of any constitutional rights, the district court dismissed the complaint.

## II

### *Constitutionality of the Ordinances*

Vaden alleges that the January ordinance deprives her of a property right, the right to pursue her business, without due process of law. It is well established that statutes or ordinances of general applicability * may condition or even prohibit the right to conduct a business without running afoul of procedural due process. "In the area of business regulation '[g]eneral statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.'" *New Motor Vehicle Board of California v. Orrin W. Fox Co.*, 439 U.S. 96, 108, 99 S.Ct. 403, 411,

58 L.Ed.2d 361 (1978) (quoting *Bi-Metallic Investment v. State Board Equalization*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915)); *see also Philly's v. Byrne*, 732 F.2d 87, 95 (7th Cir.1984) (Wood, J., concurring) ("Legislative actions which are of general applicability are not subject to a due process requirement that affected persons be given notice and an opportunity to be heard; the process due is found in the electorate's power over its chosen representatives."). The due process protection to which Vaden is entitled is substantive rather than procedural: to pass constitutional muster, the ordinance must bear a rational relation to a legitimate government interest. *Williamson v. Lee Optical Co. of Oklahoma, Inc.*, 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1954); *Nebbia v. New York*, 291 U.S. 502, 524–25, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934).

Vaden argues that the January ordinance is irrational, and thus violates due process, because it fails to further the goals listed in the May ordinance. For instance, she challenges the 8:00 a.m. to 4:00 p.m. time restriction as bearing no relationship to the stated goal of preventing children from being delayed while traveling to and from school, since school children should not be on the street once their classes begin. She alleges that prohibiting her operations in nonresidential areas is similarly arbitrary because school children generally do not travel to and from school in industrial, business, and commercial areas. Finally, she contends that requiring her to relocate every ten minutes will increase rather than minimize disturbances in residential neighborhoods.

■ We reject Vaden's arguments and find that the January ordinance is a reasonable means of accomplishing legitimate goals. In determining the constitutionality of the ordinance, we cannot consider

---

* The January and May ordinances authorize the issuance of up to five mobile food dispenser vehicle licenses for vehicles used principally for the sale of candy and ice cream, all of which would be subject to the limitations of the January ordinance. Thus, the January ordinance affects any such vendor operating on the Village's public streets.

whether the Village Board acted wisely in regulating the business of its street vendors or whether it could have accomplished its goals more effectively; we consider only whether the ordinance is wholly arbitrary. *See Ferguson v. Skrupa*, 372 U.S. 726, 730–32, 83 S.Ct. 1028, 1031–32, 10 L.Ed.2d 93 (1962); *Williamson*, 348 U.S. at 487–88, 75 S.Ct. at 464. The ordinance "need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Id.*

■ Under this deferential standard, we cannot say that the time restriction is wholly unrelated to preventing the distraction and delay of school children. The Village could have concluded that because children travel to and from school at various times during the day, mobile food dispenser vehicles should be prohibited from operating while schools are open. *Cf. Mister Softee v. Mayor and Council of Hoboken*, 77 N.J.Super. 354, 186 A.2d 513 (1962) (an ordinance that prohibited the operation of mobile food vendors near schools from 8:30 a.m. to 3:30 p.m. was reasonably related to preventing the distraction of children and traffic congestion). The Village also could have concluded that school children travel through nonresidential areas frequently enough to justify restricting the operation of dispenser vehicles in both residential and nonresidential areas. Although the ordinance "may exact a needless ... requirement in many cases, ... it is for the legislature, not the courts, to balance the advantages and disadvantages of the new requirement." *Williamson*, 348 U.S. at 487, 75 S.Ct. at 464. The requirement that mobile food dispenser vehicles move every ten minutes while operating in residential areas is likewise a rational means of preventing children from creating a disturbance by congregating in front of one residence for a long period of time. We therefore agree with the district court that the January ordinance satisfies the requirements of due process. *Cf. Service Employees Int'l Union, Local 82 v. District of Columbia*, 608 F.Supp. 1434 (D.D.C.1985) (location restrictions imposed upon street vendors to relieve traffic congestion upheld against due process challenge); *Good Humor Corp. v. Village of Mundelein*, 33 Ill.2d 252, 211 N.E.2d 269 (1965) (upholding an ordinance that prohibited all peddling on public streets).

Vaden additionally claims that both ordinances violate the equal protection clause by distinguishing between mobile food dispenser vehicles and all other vendors. She argues that because stores and mobile catering vehicles also sell to children, they are just as likely to distract and delay children traveling to and from school or to create other nuisances.

■ Unless a regulation challenged as violating the equal protection clause involves a suspect classification or a fundamental right, the regulation must be upheld if the classification is rationally related to a legitimate state interest. *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976) (per curiam); *Williamson*, 348 U.S. at 489, 75 S.Ct. at 465. As is true under due process analysis, "[s]tates are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude." *Dukes*, 427 U.S. at 303, 96 S.Ct. at 2517. A local ordinance aimed at remedying a problem need not entirely eliminate the problem. Instead, "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Williamson*, 348 U.S. at 489, 75 S.Ct. at 465. *see also Bowen v. Owens*, — U.S. —, 106 S.Ct. 1881, 1886, 90 L.Ed.2d 316 (1986).

■ The Village's disparate treatment of food vendors apparently reflects the Village's determination that because mobile food dispenser vehicles are allowed to travel the public streets of the Village in search of customers, they are more likely to attract and delay school children and to cause disturbances in residential areas. This de-

termination is entirely rational. The distinctions between street vendors and merchants with a fixed place of business have been accepted by other courts in upholding similar ordinances against equal protection challenges. *See, e.g., Commonwealth v. Gulden,* 369 Mass. 965, 341 N.E.2d 262 (1976) (ordinance regulating the operation of street vendors near schools); *Mister Softee, supra* (same). Vaden argues that as long as she remains parked on private property in a nonresidential area, she and mobile catering vehicles are equally likely to cause the harms that the Village seeks to prevent. However, "mathematical exactitude" is not required for the ordinance to survive equal protection analysis. Instead of eliminating the operation of all vendors, the Village was entitled to focus on those vendors that it perceived as causing the most serious problem. For these reasons, we conclude that the January and May ordinances do not violate Vaden's equal protection rights.

### III

*Conspiracy Claim*

■ Vaden alleges that a number of Village officials conspired under color of state law to deprive her of her constitutional rights by enacting the challenged ordinances, by delaying the renewal of her license in 1984, and by asking her to change locations numerous times prior to the enactment of the ordinances. To state a claim for relief under 42 U.S.C. § 1983, Vaden must allege not only that the defendants conspired under color of state law to deprive her of her constitutional rights, but also that she was in fact deprived of those rights. *See Reichenberger v. Pritchard,* 660 F.2d 280, 284–85 (7th Cir.1981); *Lesser v. Braniff Airways, Inc.,* 518 F.2d 538, 540 n. 2 (7th Cir.1975).

■ Since the January and May ordinances are constitutional, their enactment did not deprive Vaden of any constitutional rights. The delay in the issuance of Vaden's 1984 license was the result of the Village's attempt to enforce a state regulation. The Illinois Retailers' Occupation Tax Act required Vaden to obtain a certificate of registration from the Illinois Department of Revenue in order to lawfully engage in the retail sale of tangible personal property. *See* Ill.Stat.Ann. ch. 120, § 441a (Smith-Hurd 1983). Without the certificate, Vaden had no right to conduct her business. The Village Code Enforcement Director's refusal to issue Vaden a renewal license until she obtained the certificate therefore did not deprive Vaden of any right she may have otherwise had to operate her business. Finally, we agree with the district court that Vaden's allegation that she was asked to change her location several times is insufficient to state a claim for conspiracy under 42 U.S.C. § 1983.

### IV

Because the factual allegations contained in Vaden's amended complaint fail to state a claim upon which relief can be granted, the judgment of the district court is

AFFIRMED.