**HISPANIC TACO VENDORS OF WASHINGTON, an unincorporated association; et al, Plaintiffs,**

v.

**CITY OF PASCO, a municipal corporation; et al, Defendants.**

**No. CS–91–237–FVS.**

United States District Court, E.D. Washington.

Aug. 21, 1991.

law, nor do they violate federal laws prohibiting discrimination.

The new ordinance treats out-of-state vendors just the same as it does local vendors. There is no evidence the City of Pasco passed the ordinance to protect local businesses from competition. If the new regulations do place a burden on interstate commerce, it will be extremely indirect. As a result, the new requirements do not violate the Commerce Clause.

The Court respects the initiative and determination of the vendors. It is not as though their complaints are entirely unfounded. But it is not the function of a federal court to determine whether the City of Pasco has adopted the best solution to its perceived problems, or even a wise solution. A federal court asks only whether an ordinance is constitutional, and this one is.

### A. Parties/Jurisdiction

■ This a civil rights action which has been brought by the Hispanic Taco Vendors of Washington, an unincorporated association, together with its constituent members (hereinafter "Vendors") against the City of Pasco, Washington (hereinafter "City"). The Court has jurisdiction over the subject matter and parties[1] of this action under 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331. Venue is proper under 28 U.S.C. § 1391.

### B. Background

The Vendors are entrepreneurs of Mexican or Hispanic ancestry who sell Mexican food in Pasco from trucks or buses which have been modified for that purpose. Typically, a Vendor parks in a vacant lot or a parking lot, and sells to customers who come by car or on foot. If business is good, the Vendor may stay in one location for an extended period of time.

This lawsuit finds its genesis in a memorandum, written by Pasco's Director of Community Development, suggesting that

Antonio Salazar, Nicholas W. Marchi, Salazar Law Offices, Seattle, Wash., for plaintiffs.

Greg Rubstello, Pasco City Atty., Pasco, Wash., for defendants.

### OPINION

VAN SICKLE, District Judge.

SUMMARY OF OPINION

The vending ordinance which was adopted by the Pasco City Council at a public meeting on June 17, 1991, is not unconstitutional.

The City of Pasco is granted broad authority to solve what it perceives to be social or economic problems. The City has demonstrated that its new ordinance is not irrational, that it gives fair warning of what Pasco requires of vendors, and that the ordinance is unlikely to be enforced in an arbitrary manner. Therefore, Pasco's vendor regulations do not deny due process of law.

The Court has carefully reviewed all of the evidence to determine whether the City Council passed the new ordinance as a means to discriminate against people of Mexican or Hispanic ancestry. There is nothing to indicate the Council was motivated by any discriminatory purpose. Consequently, the newly adopted vendor regulations do not deny equal protection of the

---

1. Hispanic Taco Vendors of Washington has yet to establish that it has standing to sue as an association. *See New York State Club Assn. v. City of New York,* 487 U.S. 1, 9, 108 S.Ct. 2225, 2231, 101 L.Ed.2d 1 (1988) (quoting *Hunt v.* *Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1987)). However, the individual plaintiffs do have standing.

the City revise its regulations regarding vending. The City Council considered the recommendation at its meeting of June 4, 1990, but declined to act. Instead, the Council directed the City Manager and his staff to study the matter and report back to the Council.

During the interim, the City's then-existing regulations remained in effect. Two separate chapters of the Pasco City Code governed vending. Chapter 5.10 regulated "itinerant merchants," who were defined as those who sold goods at locations outside of "permanent structures." Whereas Chapter 5.11 governed "mobile vendors," who were defined as those who sold merchandise (including food) from vehicles on public streets.

The question of vendor regulations did not come back before the Council until March 11, 1991, when two new ordinances were submitted to the Council by its staff. The proposals included a substantial increase in fees, and a limit on the number of months a person could be licensed to vend in Pasco. The City Council declined to approve either ordinance, and referred the matter back to its staff for further work.

Two weeks later, the staff presented its revisions to the City Council. The staff withdrew its recommendation regarding a limit on the number of months a person could be licensed, but continued to propose a substantial increase in fees. After considering the revisions, the Council decided it was not ready to act, and returned the matter to its staff for additional study.

On April 8, 1991, the City staff made yet another presentation, together with written documentation to justify its recommendations. After hearing testimony from those concerned, the City Council formed a special committee to discuss the issue. The committee included council members, food vendors (including at least one of the plaintiffs), and local business people. The Committee's purpose was to formulate regulations which would be acceptable to the competing factions. The committee met at

least once, and appears to have reached agreement on at least some issues, including a proposal to ban all itinerant merchants other than food vendors.

The matter was next considered by the Council on May 13, 1991. The City staff submitted revised proposals, and the Council heard from the public. Most of those testifying chose to address the question of whether stationary food vendors should be required to locate on a site where a permanent business already existed. Again, the Council deferred making a decision.

The Council discussed the issue of vendor regulations at public meetings on both May 28, 1991, and June 10, 1991. By the conclusion of the latter meeting, the City Council decided to eliminate the provision which would have banned itinerant merchants other than food vendors. The Council also decided to prohibit stationary food vendors from operating on vacant lots.

On June 17, 1991, the City enacted [2] Ordinance No. 2826, which will be codified as Chapter 5.10A of the Pasco City Code. It combines the provisions of former Chapters 5.10 and 5.11 into a single chapter, making significant changes in the process.

Under the new regulatory scheme, itinerant vendors are divided into two categories: "stationary vendors" and "mobile vendors." According to new 5.10A.020(b), a stationary vendor is one who conducts business from a vehicle in a place other than a public street. The parties agree that the plaintiffs are stationary vendors within the meaning of the new ordinance.

By its terms, Ordinance No. 2826 requires any itinerant vendor, including a stationary vendor, to obtain a license from the City before selling goods in Pasco. A separate license is required for each location at which a vendor intends to transact business. *See* 5.10A.010. To obtain a license, a stationary vendor must pay an application fee of sixty dollars, and a license fee of forty-five dollars. *See* 5.10A.060(a). A license expires after thirty

---

**2.** The City Council's authority to adopt ordinances of the type at issue in this case is derived from state statute. *See* RCW 35A.11.020; RCW 35A.63.100; and RCW 35A.21.160. The Vendors do not question the Council's police powers.

days, so a stationary vendor must renew the license every month. *See* 5.10A.070. Since it costs forty-five dollars for each renewal, a Vendor must pay six hundred dollars per year to keep a vehicle continuously licensed at a single site.

Before enactment of Ordinance No. 2826, a Vendor could park a truck on a vacant lot and sell from there. In fact, one Vendor had purchased a lot for that purpose, and another had negotiated a lease. Section 5.10A.100(b) prohibits that practice; a vendor must now associate with a "permanent business [which is] operating and licensed under Title 5."

## C. Due Process

The Fourteenth Amendment provides "... nor shall any State deprive any person of life, liberty, or property, without due process of law; ...."

The Vendors contend Ordinance No. 2826 will drive them out of business, thereby depriving them of the "liberty" to pursue vending as an occupation, and the "property" which they acquire therefrom. That assertion may not be accepted uncritically. Before going any further, the Court must determine whether either of those terms can be properly understood to include a right to vend.

■ Had it decided to do so, the City might well have banned vendors from within its boundaries. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303–06, 96 S.Ct. 2513, 2516–18, 49 L.Ed.2d 511 (1976) (per curiam); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 757 (9th Cir.1985); *Blue Sky Bar, Inc. v. Town of Stratford*, 203 Conn. 14, 523 A.2d 467, 473–76 (1987). By choosing to allow vending to take place under some circumstances, the City conferred a property right upon vendors. *Chalmers v. City of Los Angeles*, 762 F.2d at 757 (citing *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541,

105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). That right may not be deprived without due process of law.

### 1. Substantive Due Process

■ It is within the City's police power to determine whether the practice of vending requires regulation. *See, e.g., City of New Orleans v. Dukes, supra.* And having decided that it does, the City is entitled to great deference in determining what problems it wishes to address, and how it wishes to address them. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 439 U.S. 96, 107, 99 S.Ct. 403, 410, 58 L.Ed.2d 361, 375 (1978). Since this is a matter of economic regulation, the Court asks only whether the solution proposed by the City is rationally related to the problem it seeks to solve. *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 892 (9th Cir.1988).

The degree of deference to which the City is entitled is illustrated by a review of federal cases where vending restrictions have been considered. In *City of New Orleans v. Dukes*, 427 U.S. 297, 303–06, 96 S.Ct. 2513, 2516–18, 49 L.Ed.2d 511 (1976) (per curiam), the Supreme Court rejected an equal protection challenge to an ordinance which banned all pushcart vendors from the French Quarter of New Orleans, except those who had operated there for "eight or more years." In *Vaden v. Village of Maywood, Ill.*, 809 F.2d 361, 363–66 (7th Cir.1987), the Court denied substantive due process and equal protection challenges to an ordinance which prohibited mobile food dispensers[3] from selling on city streets between 8:00 a.m. and 4:00 p.m. during the school year, and required such vehicles to "move a minimum distance of one block every ten minutes." Finally, in *Service Emp. Int. Union, Loc. 82 v. Dist. of Col.*, 608 F.Supp. 1434, 1440–447 (D.C.D.C.1985), the Court upheld a broad array of restrictions[4] on vendors in the

---

**3.** "Mobile Food Dispenser Vehicles" were defined as those who sold goods from vehicles parked on public property. *Vaden*, 809 F.2d at 363. Such vehicles would be comparable to "Mobile Vendors" under Pasco's scheme. *See* 5.10A.020(c).

**4.** The ordinance limited vending to sidewalks of a certain width; prohibited vending except during specified hours; banned overnight storage of equipment and merchandise on sidewalks; limited the design of carts; and restricted the

face of a series of constitutional attacks.[5]

What these cases demonstrate is that "in the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *City of New Orleans v. Dukes,* 427 U.S. at 303–04, 96 S.Ct. at 2516, (citation omitted). "[An] ordinance 'need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.'" *Vaden v. Village of Maywood, Ill.,* 809 F.2d at 365 (quoting *Williamson v. Lee Optical Co. of Oklahoma, Inc.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1954)). Thus, it is not for this Court to determine whether the City "acted wisely in regulating the business of its street vendors or whether it could have accomplished its goals more effectively" by some other means. *Vaden v. Village of Maywood, Ill.,* 809 F.2d at 365. An equal protection or due process challenge to economic regulations will be sustained "only if the court is unable to postulate any conceivable rationale for the regulations." *Service Emp. Int. Union, Loc. 82 v. Dist. of Col.,* 608 F.Supp. at 1441 (citing *McDonald v. Board of Election Commissioners,* 394 U.S. 802, 809, 89 S.Ct. 1404, 1408, 22 L.Ed.2d 739 (1969)). With these principles in mind, we turn to Ordinance No. 2826.

(a) Amount of Fees (5.10A.060)

■ A license fee must be a fair approximation of what it costs the City to process an application, and to monitor the licensee after the license has been issued. *See Massachusetts v. United States,* 435 U.S. 444, 463–64, 98 S.Ct. 1153, 1165–66, 55 L.Ed.2d 403 (1978). However, the fee need not be "precisely calibrated," nor must the City keep a record of its expenses to justify the fee. *See United States v. Sperry Corp.,* 493 U.S. 52, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989). Furthermore, a fee is not unconsti-

tutional simply because it makes a business unprofitable. *See City of Pittsburgh v. Alco Parking Corp.,* 417 U.S. 369, 373–374, 94 S.Ct. 2291, 2294–2295, 41 L.Ed.2d 132 (1974); *Bayside Enterprises, Inc. v. Carson,* 450 F.Supp. 696, 704 (M.D.Fla.1978).

Here, the City has estimated its administrative expenses, and has set its fees accordingly. There is nothing in the record to suggest that the City's calculations are wildly inaccurate. Consequently, the Court concludes the fees are not excessive.

■ The Vendors contend, however, that there is no rational basis for limiting the life of a license to thirty days, thereby requiring a Vendor to renew his or her license each month. The Court disagrees.

A prospective licensee must file a reasonably detailed application. *See* 5.10A.040. By investigating the information which must be provided, the City is able to determine (1) the manner in which waste will be disposed of, (2) where on a particular site the vehicle will be located, (3) whether the location of the vehicle on the site poses a risk to other structures, and (4) whether the location of the vehicle on the site will result in congestion or impede traffic. That information allows the City to make an informed judgment regarding the desirability of issuing a particular license.

It is not unreasonable for the City to conclude that conditions at a licensee's site may change significantly during the thirty days following issuance of a license. The possibility of such changes justifies careful monitoring of each licensee. The terms of Ordinance No. 2826 insure that conditions at the site are reviewed at least every thirty days, and that the licensee pays his or her fair share of the administrative costs.

(b) Association with Permanent Business

■ Section 5.10A.100(b) requires each stationary vendor to associate with a permanent business which is "operating and

---

types of merchandise which could be sold. 608 F.Supp. at 1436.

**5.** Relying on the Commerce Clause, the Court did strike down that portion of the Ordinance

which subjected out-of-state vendors to a different bonding requirement. 608 F.Supp. at 1438–440.

licensed under Title 5." That section was included in the new ordinance in order to halt the Vendors' practice of parking on vacant lots and selling food there.[6]

The issue proved to be very controversial, and generated much debate. However, by the conclusion of the meeting on June 10, 1991, the Council had decided to prohibit vending on vacant lots.

The Court concludes that the Council's decision was the result of its determination that the practice of selling food from a vehicle which is parked on a vacant lot is contrary to the City's long-term interests. Such a determination is within the City's legislative authority. *See, e.g., New Motor Vehicle Bd. v. Orrin W. Fox Co.,* 439 U.S. at 107, 99 S.Ct. at 410.

■ The more difficult question is whether the City's solution is rationally related to the problem it seeks to solve. The Vendors argue strenuously that section 5.10A.100(b) will create congestion by requiring two businesses to operate on a single site, and that the City could have accomplished its objectives through less onerous means. They may be right. Nevertheless, the Court cannot say that section 5.10A.100(b) is an irrational response to the problems created by the sale of food from a vehicle which is parked on a vacant lot. It is not so "completely, ludicrously arbitrary"[7] as to be unconstitutional.

Section 5.10A.100(b) should be analyzed in light of the process which led to its enactment, which is why the Court described the legislative history of the ordinance in some detail. When viewed in that context, section 5.10A.100(b) can be seen as the result of a vigorous debate[8] regarding the best solution to what the City believed to be a vexing problem.

The Council had to reconcile a number of competing considerations. On the one hand, it decided it could no longer continue to allow vending to occur on vacant lots. But on the other hand, the City did not want to ban stationary vending altogether. As the weeks of debate wore on, the Council may well have concluded that it could not formulate an ordinance which would address all aspects of the problem in a manner which pleased everyone. Given its options, the City Council may have decided that imposing the requirements of section 5.10A.100(b) was better than either doing nothing or banning vending. Such a response is not irrational. "A local ordinance aimed at remedying a problem need not entirely eliminate the problem. Instead, 'reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.'" *Vaden v. Village of Maywood, Ill.,* 809 F.2d at 365 (quoting *Williamson v. Lee Optical Co. of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955)). In view of the foregoing, the Court cannot say that section 5.10A.100(b) is so arbitrary as to be unconstitutional.

### 2. Procedural Due Process

■ In alleging a denial of procedural due process, the Vendors rely heavily upon the case of *Chalmers v. City of Los Angeles,* 762 F.2d 753 (9th Cir.1985). There, a Ms. Chalmers wanted to sell T–shirts outside of a museum in Los Angeles. Two ordinances regulated vending. One permitted pushcart vending with certain restrictions; the other banned vending altogether in the area where Ms. Chalmers wished to sell. Before beginning to sell, Ms. Chalmers inquired in the City Clerk's office about the conflict, and was told she could lawfully vend as long as she observed the restrictions of the ordinance which permitted some vending. When Ms. Chalmers attempted to do so, she was harassed by Los Angeles police officers and prevented

---

**6.** Section 5.10A.100(b) appears to have originated as a recommendation to the Council from its staff. The staff's concerns are summarized in Agenda Report No. 21, pp. 1–2, which was prepared by the City Manager in anticipation of a Council meeting scheduled for May 28, 1991. *See* Defendant's Exhibit No. 101.

**7.** *Pontarelli Limousine, Inc. v. City of Chicago,* 929 F.2d 339, 342 (7th Cir.1991).

**8.** The Court notes that the argument over section 5.10A.100(b) was free, fair, and full. No voices were excluded; all points of view were heard.

from selling. 762 F.2d at 755–56. Citing *Village of Hoffman Estates v. The Flip Side, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Court held that Ms. Chalmers had been denied due process of law. The Court ruled that the unresolvable conflict between the two ordinances denied Ms. Chalmers fair warning of the prohibited conduct, and led to arbitrary enforcement. 762 F.2d at 757–58.

The Vendors argue that the holding in *Chalmers* is applicable here.[9] They point to the following:

(a) Section 5.04.120 provides, "No annual license fee shall exceed two hundred twenty-five dollars per year." But section 5.10A.060(a) imposes fees which exceed that amount if a Vendor renews his or her license each month.

(b) Section 5.04.060 states that all licenses are to be issued for one year.[10] But under section 5.10A.070, a license is valid for thirty days.

(c) Section 22.68.020(1)(5) could be construed to allow the sale of food on a vacant lot as long as it is within two hundred feet of the premises of a business which is operated in an enclosed building. But section 5.10A.100(b) requires a stationary vendor to locate on a site where an established business is operating.

Assuming that the Vendors' interpretations of the various sections are correct, does a conflict exist which is comparable to that described in *Chalmers?* In analyzing a municipal ordinance, a federal court should " 'take the statute as though it read precisely as the highest court of the State has interpreted it.' " *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1348 (9th Cir.1984) (quoting *Wainwright v. Stone*, 414 U.S. 21, 22–23, 94 S.Ct. 190, 192, 38 L.Ed.2d 179 (1973)). The Ninth Circuit has said, "This court will follow a state supreme court's interpretation of its own statute in the absence of extraordinary circumstances." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir.1986) (citations omitted). The Court then went on to say, "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Dimidowich*, 803 F.2d at 1482 (citations omitted).

The Washington Supreme Court has established rules of statutory construction which allow this Court to resolve the alleged conflict between the different sections of the Pasco Municipal Code. When statutes "relate to the same thing or class, they are in pari materia and must be harmonized if possible." *King County v. Taxpayers*, 104 Wash.2d 1, 9, 700 P.2d 1143 (1985) (citing *Snohomish Cy. PUD 1 v. Broadview Television Co.*, 91 Wash.2d 3, 8, 586 P.2d 851 (1978)). If it proves impossible to harmonize the statutes, then preference will be given to the more specific. *Omega Nat'l Ins. Co. v. Marquardt*, 115 Wash.2d 416, 425, 799 P.2d 235 (1990); *Tacoma v. Taxpayers*, 108 Wash.2d 679, 690, 743 P.2d 793 (1987).

Applying those rules of statutory construction to the facts of this case, the Court concludes that the Washington Supreme Court would give effect to the plain language of Ordinance No. 2826. To the extent harmonization proved impossible, the new ordinance would govern since it is the more specific. Consequently, there is no conflict in this case which is comparable to that in *Chalmers*. The City's regulatory scheme gives fair warning of what it requires, and it is not likely to lead to arbitrary or discriminatory enforcement.

D.  Equal Protection / 42 U.S.C. § 1981

■ The Fourteenth Amendment says no state shall "... deny to any person within

---

**9.** The Vendors are not making a vagueness challenge as it is traditionally understood. *See, e.g., Village of Hoffman Estates v. The Flip Side, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). They are not arguing that Ordinance No. 2826 is vague on its face, or as applied to them. Rather, it is the apparent conflict between Ordinance No. 2826 and other sections of the municipal code which the Vendors claim denies them due process. *See Chalmers, supra.*

**10.** Although it goes on to add, "unless otherwise provided herein; ...."

its jurisdiction the equal protection of the laws."

42 U.S.C. § 1981 states:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Vendors assert that Ordinance No. 2826 has a racially disproportionate impact upon persons of Mexican or Hispanic ancestry. As a result, they contend the City should be required to demonstrate some compelling justification for its regulatory scheme.

On its face,[11] the ordinance makes no distinctions among racial groups. The plaintiffs argue, however, that they are the only persons [12] actively engaged in vending in Pasco, so that the entire burden of the new ordinance will be borne by business people of Mexican or Hispanic ancestry. This, they submit, demonstrates that the ordinance will have a racially disproportionate impact.[13]

In argument to the Court, counsel for the Vendors said, "[I]t is true that in this case there's no evidence of intentional discrimination." The Court agrees, and so finds.[14]

Counsel for the Vendors argues, nevertheless, that racially disproportionate impact is sufficient to require strict scrutiny of the new ordinance. Counsel's argument is clearly wrong. The Supreme Court has ruled on that precise point, and has held, "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) (reaffirming *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976)).

In that regard, the evidentiary requirements of 42 U.S.C. § 1981 are no different. There can be no violation of § 1981 without proof of "purposeful discrimination." *General Building Contractors Assoc., Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1981).

There being no evidence of intentional or purposeful discrimination against persons of Mexican or Hispanic ancestry, the Court concludes that Ordinance No. 2826 violates neither the Equal Protection Clause nor 42 U.S.C. § 1981.

### E. Commerce Clause

■ "The Commerce Clause of the Constitution grants Congress the power '[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.' Art. I, § 8, cl. 3." *Maine v. Taylor*, 477 U.S. 131, 137, 106 S.Ct. 2440, 2446, 91 L.Ed.2d 110 (1985).

Ordinance No. 2826 is neutral on its face; an out-of-state vendor is treated no differently than a local vendor. Nevertheless, the Vendors argue the ordinance places an impermissible burden on interstate com-

---

**11.** The vendors cite *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220, 227–28 (1886), in which the Supreme Court found a denial of equal protection when an ordinance which was neutral on its face was administered in a discriminatory fashion. In this case, however, a temporary restraining order has prevented the City from ever enforcing the new ordinance.

**12.** The record reflects that non-Hispanic persons have vended goods in the City in the past, and that their behavior did nothing to enhance the reputation of vendors. In fact, an advisory committee formed by the City Council to study this issue concluded that the City should ban all vendors other than food vendors. That recommendation was rejected when the City Attorney questioned its constitutionality.

**13.** The Court assumes, without deciding, that the new ordinance will have a racially disproportionate impact.

**14.** Notwithstanding counsel's concession, the Court makes this finding only after having conducted the "sensitive inquiry" into both direct and circumstantial evidence which is required by *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

merce. The Vendors assume the new ordinance will drive them out of business. Since many of the ingredients which the Vendors use come from out-of-state sources, they argue their suppliers will be deprived of this particular market for their products, and that persons in Pasco will be denied the opportunity to purchase food prepared from ingredients which arrive locally as a result of interstate commerce.[15]

When analyzing a Commerce Clause question, the Supreme Court makes a distinction between "statutes that burden interstate transactions only incidentally, and those that affirmatively discriminate against such transactions." *Maine v. Taylor*, 477 U.S. at 138, 106 S.Ct. at 2447. "[S]tatutes in the first group violate the Commerce Clause only if the burdens they impose on interstate trade are 'clearly excessive in relation to the putative local benefits,' *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 [90 S.Ct. 844, 847, 25 L.Ed.2d 174] (1979)." 477 U.S. at 138, 106 S.Ct. at 2447.

Ordinance No. 2826 makes no distinction between local vendors and out-of-state vendors, and there is nothing in the record to suggest that the new ordinance was enacted to protect local business interests from competition. To the extent the ordinance places any burden on interstate commerce, it is incidental. Thus, the regulations are tested under the more deferential standard.

Furthermore, in those cases where vendor regulations comparable to those enacted by the City have been challenged under the Commerce Clause, the regulations have been upheld. *See, e.g., Service Emp. Int. Union, Loc. 82 v. Dist. of Col.*, 608 F.Supp. 1434, 1436–38 (D.C.D.C.1985) (rejecting arguments that restrictions "inhibit the ability of street vendors to generate income, stifle competition between street vendors and 'storefront vendors,' and discourage free trade among the states by reducing the amount of merchandise purchased"); *Blue Sky Bar, Inc. v. Town of Stratford*, 203 Conn. 14, 523 A.2d 467, 475–76 (1987) (rejecting argument that "prohibition on

sales from motor vehicles constitutes an impermissible burden").

Here, the City's revised regulatory scheme will enable the City to restrict vending to those locations which are consistent with the City's long-term interests, and require a licensee to pay his or her fair share of the costs of licensing and monitoring. Those are substantial benefits to the City. By comparison, the burden on interstate commerce, if any, is slight. Ordinance No. 2826 does not violate the Commerce Clause.

IT IS HEREBY ORDERED:

1. The Vendors' request for injunctive relief is DENIED.

2. All of the Vendors' claims against the City of Pasco are DISMISSED WITH PREJUDICE.

The Clerk is hereby DIRECTED to file this Opinion, enter a Judgment in accordance hereto and furnish copies to counsel.

---

**15.** The Vendors have not established that they have standing to assert claims on behalf of either out-of-state suppliers or the customers

who purchase their food. *See Service Emp. Int. Union, Loc. 82 v. Dist. of Col.*, 608 F.Supp. 1434, 1437 n. 3 (D.C.D.C.1985).