**HISPANIC TACO VENDORS OF WASHINGTON, an unincorporated association; Miguel Mejia; Antonio Mejia; Celso Peralta; Joaquin Tiscareno; Celia Garcia, Plaintiffs–Appellants,**

v.

**CITY OF PASCO, a municipal corporation, et al., Defendants–Appellees.**

**No. 91–36031.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 1993.

Decided May 28, 1993.

Antonio Salazar and Nicholas Marchi, Salazar Law Offices, Seattle, WA for plaintiff-appellant.

Greg A. Rubstello, City Attorney's Office, Pasco, WA for defendant-appellee.

Before BOOCHEVER, THOMPSON and KLEINFELD, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Five entrepreneurs who collectively form Hispanic Taco Vendors of Washington ("the vendors"), an unincorporated association, challenge on constitutional grounds a 1991 ordinance enacted by the Pasco City Council ("the City Council"). The ordinance regulates itinerant vending in the City of Pasco ("the City") and imposes licensing fees. The district court held that the ordinance was constitutional, refused to enjoin its enforcement, and dismissed the vendors' case. The vendors appeal. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

FACTS

The vendors are of Hispanic ancestry. They sell Mexican food from mobile vehicles equipped for that purpose. The majority of the vendors' customers are Hispanic. The City's Hispanic population is approximately 40% of the total population.

Typically, a vendor parks his or her vehicle during the day in a vacant lot or parking lot and sells to customers who come by car or on foot. If business is good at a particular location, a vendor may operate from that spot for an extended period.

All five vendors were licensed under a 1984 city ordinance that regulated itinerant vending. In 1991, the City Council enacted a new ordinance, No. 2826, codified in chapter 5.10A of the City Code. This new ordinance established new licensing fees, made the licenses nontransferable, banned sales by the vendors from vacant lots, and imposed setback requirements. The vendors challenge these provisions. The following is a brief summary of each.

1. *Licensing Fees.* Under the new ordinance, each vendor is required to pay $60 to apply for a new license, plus a monthly fee of $45. City Code § 5.10A.060(a). Previously, there was no application fee, although the monthly rate was $50. According to the vendors, these fees are onerous. Each vendor must obtain a license for each site where he or she intends to park and sell food. Each license is valid for only thirty days at a time. There is no fee to renew a license each month (beyond the $45), but updated documentation is required for renewal.

Although this fee schedule requires the vendors to pay $600 per site in the first year, and $540 per site each year thereafter, a business in the City operating from a fixed location is required to pay only $33.75 annually for its license. In defense of the higher fees, the City produced evidence showing that the cost of policing and regulating each itinerant vendor at each site was approximately $45–$50 per month.

2. *Transferability of Licenses.* The itinerant vendor licenses are nontransferable. *See* City Code § 5.10A.080(b). Standard business licenses in Pasco are transferable. City Code § 5.04. The City asserts that nontransferable licenses improve monitoring of itinerant vendors.

3. *Vacant Lot Sales.* The ordinance bans food sales from vacant lots. City Code § 5.10A.100(b). The evidence showed that this provision is especially troublesome to the vendors. Vacant lots are ideal sites for taco vending. The vendors attract customers who drive by their location. The extra space in vacant lots provides parking for these customers and allows the vendor to choose where on the lot to locate his vehicle to best attract passing motorists. One of the vendors, Miguel Mejia, had purchased a vacant lot in downtown Pasco for the express purpose of selling Mexican food from his vehicle at that location. He had leased another vacant lot in the City for the same purpose.

The City introduced evidence of the history and purpose of the provision banning sales from vacant lots. This provision evolved over several months of debate about proposed measures to regulate vending in the City. The City Council first considered but rejected a measure that would have banned all itinerant vending in the City except food sales. The vacant lot ban was then proposed by David McDonald, a Pasco community development official. In a memo to the City Council, McDonald offered several justifications for the ban on vacant lot vending. He stated that the ban would (1) prevent damage to curbs caused by the vendors' and their customers' driving on and off of the lots; (2) reduce blowing dirt created by vehicle traffic on vacant lots; (3) preserve zoning regulation over the lots; (4) encourage permanent development of those lots; and (5) allow permanent businesses to exercise control over the vendors and discourage nuisances.[1] *See* Pasco City Council Agenda Report No. 26, Attachment B, June 6, 1991 (Exhibit to Affidavit of David McDonald dated July 11, 1991). The vacant lot provision was then adopted.

4. *Setback Requirements.* The setback provisions of the ordinance impose setback and other location requirements on the vendors' vehicles. *See* City Code § 5.10A.100(c),(e). This requirement made some of the sites used by the vendors unsuitable when the ordinance was enacted. One of the vendors, Celso Peralta, testified that he had to relocate to comply with the ordinance.[2] The City's justification for the setback requirements is that they reduce congestion and improve safety.

Immediately after the City Council enacted the ordinance, the vendors filed suit in the district court and obtained a temporary restraining order barring its enforcement. They contended the ordinance violated four separate constitutional provisions: the Commerce Clause (Article I, section 8), the Equal Protection Clause of the Fourteenth Amendment, and both the substantive and procedural due process components of the Due Process Clause of the Fourteenth Amendment. After a three-day bench trial, the district court denied injunctive relief and dismissed the vendors' case with prejudice. *Hispanic Taco Vendors of Washington v. City of Pasco,* 790 F.Supp. 1023 (E.D.Wash. 1991). This appeal followed.

## STANDARD OF REVIEW

We review de novo mixed questions of law and fact implicating issues of constitutional law. *See National Association of Radiation Survivors v. Derwinski,* 994 F.2d 583, 587–88 (9th Cir.1992); *United States v. 50.50 Acres of Land,* 931 F.2d 1349, 1352 (9th Cir.1991). Findings of fact by the district court are reviewed for clear error. Fed.R.Civ.P. 52(a); *Radiation Survivors,* at 587.

## DISCUSSION

### A. Commerce Clause

A statute triggers scrutiny under the Commerce Clause if it (1) affirmatively dis-

1. While the vendors were precluded from selling food from vacant lots, they could comply with the statute by selling food from a site on which a permanent business was operating and licensed. *See* City Code § 5.10A.100(b). The City's justification for this provision was that it permitted the vendors to sell their food from outdoor locations, while at the same time satisfying the City's concerns expressed by McDonald. The provision was adopted after lengthy debate and consideration of a possible alternative which would have banned itinerant food sales altogether.

2. At oral argument, we inquired as to the effect of the ordinance on the vendors since August 1991, when the district court denied injunctive relief. Counsel for the vendors reported that one of the vendors had ceased operations altogether. A second, Miguel Mejia, had reduced the volume of his business because one of his two trucks had been operating on vacant lots. The rest continued to do business as before, including Peralta, who rented a new location.

criminates against transactions in interstate commerce, or (2) regulates evenhandedly but incidentally burdens interstate transactions. Statutes of the second type will be upheld unless the burdens they impose on interstate trade are clearly excessive in relation to the putative local benefits. *Hass v. Oregon State Bar*, 883 F.2d 1453, 1462 (9th Cir.), *cert. denied*, 494 U.S. 1081, 110 S.Ct. 1812, 108 L.Ed.2d 942 (1990).

Here, the challenged ordinance does not affirmatively discriminate against out-of-state merchants. The vendors argue instead that the ordinance imposes an unreasonable burden on interstate commerce and will force them out of business. This in turn, they contend, will terminate their purchases within Washington of certain fruits, vegetables and tortillas that are sold into Washington from other states.

The district court found this asserted burden on interstate commerce to be slight. We agree. The vendors did not show there would be any significant diminution in the market for the sale into Washington of out-of-state fruit, vegetables or tortillas, assuming they went out of business. Indeed, even the assumption that they might have to go out of business is problematic. The vendors introduced no evidence that the license fees and other requirements of the new ordinance were so pernicious that their businesses would be destroyed. One vendor, Peralta, testified he would need to find a new location, but there was no evidence of the unavailability of another suitable location in the City. In fact, after the district court denied injunctive relief, Peralta found a new location where he was conducting business at the time of oral argument.

Against any slight burden on interstate commerce, we weigh the benefits to the City in adopting the ordinance. These benefits are a reduction in urban blight, the potential development of vacant lots with permanent structures, and a heightened ability to police the vendors' operations. Applying the *Hass* standard, we cannot say the district court erred in concluding that the burden on interstate commerce was clearly excessive in relation to the putative local benefits. The vendors' Commerce Clause challenge fails.

B. Equal Protection

The vendors contend that the ordinance deprives them of equal protection of the laws based on their ethnicity in violation of the Fourteenth Amendment.[3] On its face, the ordinance does not discriminate against Hispanics. Nevertheless, the vendors assert that the ordinance is invalid because of its disproportionate impact on Hispanics.

The district court assumed, without deciding, that the ordinance had a disproportionate impact on Hispanic vendors as opposed to vendors of other ethnic groups. *Hispanic Taco Vendors,* 790 F.Supp. at 1031 n. 13. The City contends that the ordinance will have a neutral impact. We need not resolve this dispute because we affirm the district court's holding that the vendors failed to show a discriminatory intent.

"Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *see also Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040–2047, 48 L.Ed.2d 597 (1976).

Under *Arlington Heights,* "[d]etermining whether invidious discriminatory purpose

3. The vendors contend both that the ordinance is unconstitutional and that they are entitled to relief under 42 U.S.C. § 1981(a) (42 U.S.C.A. § 1981(a) (Supp.1992)). Section 1981(a) provides: "All persons within the jurisdiction of the United States shall have the same right ... to the full and equal benefit of all laws and proceedings ... as is enjoyed by white citizens."

In this context, the section 1981 claim is indistinguishable from the constitutional claim and the analysis is the same. Under either theory, the vendors must prove they are deprived of equal protection of the laws, which requires a showing of discriminatory intent. "Proof of intent to discriminate is necessary to establish a violation of 42 U.S.C. § 1981." *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1438, *modified on other grounds*, 742 F.2d 520 (9th Cir.1984). Similarly, proof of discriminatory intent is required to show that state action having a disparate impact on a minority group violates the Equal Protection Clause. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977).

was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." 429 U.S. at 266, 97 S.Ct. at 564. The discriminatory impact of a governmental act may be evidence of discriminatory intent, but is not necessarily "proof" of intent. The impact is "an important starting point." *Id.* But "[i]mpact alone is not determinative." *Id.*

The vendors have presented no evidence of a discriminatory motive behind the ordinance. Indeed, they conceded to the district court "that in this case there's no evidence of intentional discrimination." *Hispanic Taco Vendors,* 790 F.Supp. at 1031. The district court conducted an independent inquiry, and made a finding of fact that there was no intentional discrimination. *Id.* at 1031, n. 14.

The vendors nevertheless argue that the ordinance has such a severe discriminatory impact on Hispanics that they are relieved of their burden of providing evidence of discriminatory intent. *See Arlington Heights,* 429 U.S. at 266, 97 S.Ct. at 564 ("Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action."). Here, however, the disproportionate impact of this ordinance does not approach the level of discrimination in cases where the Supreme Court has invalidated laws solely because of their impact. *See, e.g., Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960) (Alabama legislature changed City of Tuskegee's boundaries so that all but a handful of the 400 African-American residents could not vote in city elections); *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (San Francisco banned laundries in wooden structures, and then issued variances to every white applicant but one and denied variances to every Chinese applicant). The vendors did not show that, as was the case in *Yick Wo,* any of them would be deprived of their livelihood while vendors of other races would continue to operate as before. Moreover, the ordinance regulates all itinerant vending, not just taco or other food vendors.

We understand the vendors' difficulty in this case—"[p]roving the motivation behind official action is often a problematic undertaking." *Hunter v. Underwood,* 471 U.S. 222, 228, 105 S.Ct. 1916, 1920, 85 L.Ed.2d 222 (1985). But we will not impute discriminatory motives to the City Council without any supporting evidence. The City's explanation of the ordinance is neutral and satisfies *Arlington Heights.* We therefore hold that the ordinance does not discriminate based on ethnicity, and that it need not be subject to the most exacting scrutiny under the Equal Protection Clause.

Thus, we "presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976) (per curiam) (upholding ordinance that banned vending but grandfathered vendors in operation more than eight years).

The district court, with great care, set forth the City's interests and how the contested provisions of the ordinance rationally relate to those interests. *Hispanic Taco Vendors,* 790 F.Supp. at 1028–29. We agree with the district court's analysis. The provisions of the ordinance are not so irrational nor its ends so illegitimate as to render it unconstitutional. The license fees and license transfer restrictions are required to monitor the vendors' vehicles for compliance with health and safety regulations. The district court found that the license fees are a reasonable estimate of these monitoring costs. *See id.* at 1028. The ban on vacant lot vending might promote development of permanent structures on those lots. The setback requirements might reduce congestion and promote safety. These are legitimate governmental interests and the means of promoting them are rational. *See Vaden v. Village of Maywood,* 809 F.2d 361, 364–65 (7th Cir.) (holding that an ordinance restricting mobile vending was rationally related to a legitimate state interest), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). We may have chosen different means had we been sitting as the City Council in 1991. But our role is not to substitute our judgment for the City Council's.

In sum, "the absence of proof of discriminatory intent forecloses any claim that the official action challenged in this case violates the Equal Protection Clause of the Fourteenth Amendment." *City of Memphis v.*

*Greene,* 451 U.S. 100, 119, 101 S.Ct. 1584, 1596, 67 L.Ed.2d 769 (1981).

C. Substantive Due Process

The vendors contend that the ordinance violates the substantive due process component of the Due Process Clause of the Fourteenth Amendment because it is not rationally related to a legitimate governmental interest. Our analysis of the vendors' equal protection challenge applies to this contention. *See Burlington Northern R.R. Co. v. Department of Public Serv. Regulation,* 763 F.2d 1106, 1109 (9th Cir.1985) ("The standard for judging the constitutionality of a statute ... which regulates economic activity, is the same under the due process, equal protection or commerce clauses."). The equal protection and substantive due process challenges conflate in the absence of intentional discrimination by the City. As we have stated, the district court correctly determined that the ordinance is rationally related to legitimate governmental interests. The vendors' substantive due process challenge therefore fails.

D. Procedural Due Process Claim

The vendors contend the language of the ordinance conflicts with language in other chapters of the City Code. They argue this conflict could lead to arbitrary enforcement of the ordinance and, therefore, the ordinance violates the procedural due process component of the Due Process Clause of the Fourteenth Amendment. *See Chalmers v. City of Los Angeles,* 762 F.2d 753, 758 (9th Cir.1985). The district court held that the ordinance does not conflict with other code provisions. *Hispanic Taco Vendors,* 790 F.Supp. at 1030. We agree.

Chapter 5.10A of the Pasco City Code, the new ordinance, flatly prohibits the transfer of itinerant vendor licenses. City Code § 5.10A.080(b). Chapter 5.04 of the code, however, allows transfers of business licenses upon application and payment of a $50 fee. There is no conflict in these provisions. Section 5.10A.080(b), the itinerant vendor provision, specifically refers to "license[s] issued under this chapter." This section does not create any confusion with the more general business license provision of separate chapter 5.04.

Chapter 5.10A of the Pasco City Code, the new ordinance, also requires that itinerant vendors operating all twelve months a year pay $600 in licensing fees the first year and $540 per year thereafter. *See* City Code § 5.10A.060. Chapter 5.40 of the code (Code § 5.04.120), however, provides that the maximum annual licensing fee for businesses is $225. Moreover, chapter 5.04 specifically exempts several businesses from the $225 annual maximum fee, such as taxis and video arcades, but does not specifically exempt itinerant vendors. Because certain businesses are exempted from the annual maximum fee under chapter 5.04, and vending is not among them, there is a facial conflict between the vending fees provided by chapter 5.10A and the maximum fee provided by chapter 5.04.

The City argues this conflict can be resolved by interpreting the vending licenses as 30-day, rather than annual, licenses. It is clear that the effect of the new ordinance is to impose an initial $600 annual fee, and thereafter a $540 annual fee, and that the City Council set these rates with the annual amounts in mind.

Under Washington law, however, we analyze the statutes to see if they can be harmonized. *See Omega Nat'l Ins. Co. v. Marquardt,* 115 Wash.2d 416, 799 P.2d 235, 239–40 (1990); *Tacoma v. Taxpayers of the City of Tacoma,* 108 Wash.2d 679, 743 P.2d 793, 798–99 (1987). Logically, the fees in chapter 5.10A, the new ordinance, apply to itinerant vendors, and the lower annual maximum fees in chapter 5.04 apply to businesses that operate at a fixed location. Indeed, the vendors made this very assumption when they challenged the new ordinance's annual fees under the Equal Protection and Due Process Clauses. Because the two ordinances can be harmonized, there is no conflict between them.

## CONCLUSION

We conclude that the challenged ordinance does not violate the Commerce Clause, the Equal Protection Clause, or the Due Process Clause.

AFFIRMED.