**Charles KAEHLY, et al., Plaintiffs,**

v.

**CITY OF PITTSBURGH and Stadium Authority of the City of Pittsburgh, Defendants.**

**No. CIV. A. 96–832.**

United States District Court, W.D. Pennsylvania.

Dec. 17, 1997.

Leonard E. Sweeney, Pittsburgh, PA, for Plaintiffs.

Howard J. Schulberg, Pittsburgh, PA, for City of Pittsburgh.

William G. Merchant, Pepernick & Gefsky, P.C., Pittsburgh, PA, for Stadium Authority of the City of Pittsburgh.

## MEMORANDUM OPINION

BLOCH, District Judge.

Presently before the court are the parties' cross-motions for summary judgment. For the reasons set forth in this opinion, the Court will grant defendants' motion and deny plaintiffs' motion.

### I. *Background*

Each of the plaintiffs were issued a vending license which expired on or about January 31, 1996, by defendant City of Pittsburgh (City) pursuant to City of Pittsburgh Ordinance No. 719 (Ordinance No. 719). In December 1995, defendant City amended Ordinance No. 719 effective December 15, 1995, to, *inter alia,* prohibit vending on or within thirty feet of Three Rivers Stadium property. Prior to its amendment, Ordinance No. 719 permitted vending on Three Rivers Stadium property, provided that vendors remained at least 250 feet from the outside wall of the stadium.

Three Rivers Stadium property is owned and controlled by defendant Stadium Authority of the City of Pittsburgh (Stadium Authority). Daniel Onorato is both a Pittsburgh City Council member and a member of defendant Stadium Authority. Onorato was the sponsor of Bill No. 2601 which amended Ordinance No. 719.

The Stadium Authority is party to an exclusive Concession Services Agreement (CSA) with Pittsburgh Stadium Concessions, Inc. The CSA, which currently extends until December 31, 1998, grants Pittsburgh Stadium Concessions, Inc., the exclusive right and privilege to sell food, beverages and related services to the public at locations on Stadium Authority property.

Plaintiffs contend that the effect of amending Ordinance No. 719 was a revocation of their vending licenses because the vast majority of plaintiffs' vending revenue was generated while vending on Three Rivers Stadium property. Accordingly, plaintiffs filed the within action alleging: (1) deprivation of plaintiffs' substantive due process rights under the Pennsylvania and United States Constitutions (Counts I and VI); (2) deprivation

of plaintiffs' procedural due process rights under the Pennsylvania Constitution (Count II); (3) deprivation of plaintiffs' right to equal protection under the Pennsylvania and United States Constitutions (Counts III and VIII); (4) a violation of federal antitrust laws (Count IV); (5) a violation of 42 U.S.C. § 1983 (Count V); and (6) a violation of Article II, section 1 of the Pennsylvania Constitution (Count VII). In addition, plaintiffs seek an injunction permitting them to vend on Three Rivers Stadium property in accordance with Ordinance No. 719 as it existed prior to the December 1995 amendment.

## II. Summary judgment standard

Summary judgment may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir.1990).

The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir.) (en banc), cert. dismissed, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that "the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." Id.; Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.

In this case the parties agree that there are no material issues of fact in dispute. Accordingly, resolution of this case by summary judgment is appropriate.

## III. Discussion

### A. Plaintiffs' substantive due process claims

■ In Counts I and VI of their complaint, plaintiffs contend that defendants, by amending Ordinance No. 719, deprived plaintiffs of a property interest in violation of plaintiffs' substantive due process rights. To state a valid claim for deprivation of substantive due process, a plaintiff must set forth a protected property interest. See, e.g., Independent Enterprises, Inc. v. Pittsburgh Water and Sewer Authority, 103 F.3d 1165, 1177–1180 (3d Cir.1997); Mims v. Shapp, 744 F.2d 946, 949 (3d Cir.1984). While conceding that a vending license may constitute a protected property interest, defendants, relying upon Lindsay v. City of Philadelphia, 863 F.Supp. 220, 223–24 (E.D.Pa.1994), contend that there is no constitutionally protected property interest to vend in a particular location. Thus, it is defendants' position that because Ordinance No. 719 merely restricted the area in which plaintiffs could vend, plaintiffs have not been deprived of a protected property interest and, consequently, that their due process claims must fail.

Plaintiffs counter defendants' position by arguing that they are not seeking exclusive rights to vend on Three Rivers Stadium property; rather, plaintiffs allege that by amending Ordinance No. 719, defendants "effectively" revoked plaintiffs' licenses by prohibiting them from vending anywhere on Stadium Authority property where plaintiffs allegedly earn the majority of their income. In other words, plaintiffs contend that Ordinance No. 719, in effect, has deprived plaintiffs of their ability to vend as an occupation.

■ This Court has concluded, however, that even if plaintiffs have set forth a protected property interest, which is an issue that this Court need not decide, plaintiffs' substantive due process claims must fail as Ordinance No. 719 is rationally related to a legitimate state interest. See, e.g., United

*States v. Williams,* 124 F.3d 411, 422 (3d Cir.1997) (where suspect classifications or classifications affecting fundamental rights are not involved, "economic and social legislation is subject to rational basis review, under which a law need only be rationally related to a legitimate state interest.") (*quoting Tolchin v. Supreme Court of New Jersey,* 111 F.3d 1099, 1113 (3d Cir.1997) (internal quotation omitted)), *cert. denied* —— U.S. ——, 118 S.Ct. 435, 139 L.Ed.2d 334, (1997). *See also Romer v. Evans,* 517 U.S. 620, 630, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996) ("[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.").[1]

■ It is within the city's police power to determine whether the practice of vending requires regulation. *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam). Once a city decides that regulation is required, the city is entitled to great deference in determining what problems it wishes to address, and how it wishes to address them. *Id.* at 303. "[I]n the local economic sphere, it is only the invidious discrimination, the wholly arbitrary act, which cannot stand consistently with the Fourteenth Amendment." *Id.* at 303–04 (citation omitted).

This Court has reviewed all the exhibits offered by the parties, which include transcripts of certain Pittsburgh City Council legislative sessions at which the then-proposed amendment to Ordinance No. 719 was considered. The transcripts of those hearings demonstrate that Council considered many issues in amending Ordinance No. 719, including, as plaintiffs allege, an interest in maximizing profits in order to keep the Pirates[2] and the Steelers[3] in Pittsburgh as well as a concern about lowering the taxpayer's burden with regard to the substantial cost of maintaining the stadium. In particular, several councilpersons expressed a concern that independent vendors on Three Rivers Stadium property were taking sales away from the Stadium Authority's contracted vendors due to the fact that independent vendors such as plaintiffs, who do not pay a percentage of their proceeds to the Stadium Authority, are able to sell goods at a substantially lower price. Because Three Rivers Stadium is a public facility funded by tax dollars, the less income generated at Three Rivers Stadium, the higher the burden that falls upon the individual taxpayer.

Revenue production is a legitimate state interest. *See Allright Colorado v. City and County of Denver,* 937 F.2d 1502, 1512 (10th Cir.) (regulations governing off-airport shuttle parking services were rationally related to legitimate governmental objectives in, *inter alia,* raising revenue), *cert. denied,* 502 U.S. 983, 112 S.Ct. 587, 116 L.Ed.2d 612 (1991); *Alamo Rent–A–Car, Inc. v. Sarasota–Manatee Airport Auth.,* 825 F.2d 367, 373 (11th Cir.1987) ("Revenue raising is undoubtedly a legitimate and substantial governmental objective.") (*citing Gannett Satellite Information Network, Inc. v. Metropolitan Transp. Auth.,* 745 F.2d 767, 775 (2d Cir.1984); *Lehman v. City of Shaker Heights,* 418 U.S. 298, 304, 94 S.Ct. 2714, 2717–18, 41 L.Ed.2d 770 (1974) (plurality)), *cert. denied,* 484 U.S. 1063 (1988); *Sakamoto v. Duty Free Shoppers, Ltd.,* 764 F.2d 1285, 1289 (9th Cir.1985) (exclusive franchise agreement between airport and business which sold gifts to tourists was rationally related to legitimate state interest in producing revenue and maintaining security and traffic control), *cert. denied* 475 U.S. 1081, 106 S.Ct. 1457, 89 L.Ed.2d 715 (1986). Furthermore, the amendments to Ordinance No. 719 are rationally related to the goal of increasing revenues as it is likely that the Stadium Authority's contracted vendors will generate more sales if independent vendors

---

1. Challenges brought under the Pennsylvania Constitution are subject to the same test as those challenged under the Fourteenth Amendment to the United States Constitution. *See Pennsylvania Medical Society v. Foster,* 147 Pa.Cmwlth. 528, 608 A.2d 633, 636 (1992) ("The test for substantive due process in the areas of social and economic legislation is whether the challenged law has a rational relation to a valid state objective(s).") (citations omitted); *Gambone v. Commonwealth of Pennsylvania,* 375 Pa. 547, 101 A.2d 634, 637 (1954).

2. Pittsburgh's professional baseball team.

3. Pittsburgh's professional football team.

are permitted to vend only on the periphery of Stadium Authority property.

Moreover, the legislative sessions transcripts indicate that, in amending Ordinance No. 719, Pittsburgh City Councilpersons were also concerned about traffic control on Three Rivers Stadium property. More specifically, it appears that under the existing interpretation of Ordinance No. 719 in December 1995, more and more independent vendors had moved closer to the stadium to vend on and at the bottom of entrance ramps. A concern for controlling the flow of traffic constitutes a legitimate governmental interest, and the amendment to Ordinance No. 719 is reasonably related to alleviating congestion and overcrowding. By limiting the vendors permitted to vend on Three Rivers Stadium property to those who have contracted with the Stadium Authority, defendants are able to greatly reduce the number of vendors on Three Rivers Stadium property, thereby reducing threats to the safe and orderly flow of pedestrian traffic, a concern which is particularly great during high-attendance events, such as All–Star games or sports playoffs.

"Governmental bodies have wide latitude in enacting social and economic legislation; the federal courts do not sit as arbiters of the wisdom or utility of these laws." *Allright Colorado, Inc. v. City and County of Denver,*

937 F.2d at 1512 (internal quotation marks and citations omitted). "[I]t is up to legislatures, not courts, to decide on the wisdom and utility of legislation." *Ferguson v. Skrupa,* 372 U.S. 726, 729, 83 S.Ct. 1028, 1030, 10 L.Ed.2d 93 (1963). "For protection against abuses by legislatures the people must resort to the polls, not to the courts." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955) (*quoting Munn v. Illinois,* 94 U.S. 113, 134, 4 Otto 113, 24 L.Ed. 77 (1876)).[4]

For the above reasons, the Court rejects plaintiffs' substantive due process claims and finds that summary judgment in favor of defendants is appropriate.

### B. *Plaintiffs' equal protection claims*

In Counts III and VIII of their complaint, plaintiffs contend that defendants' actions in amending Ordinance No. 719 deprived plaintiffs of their right to equal protection under the both the United States and the Pennsylvania Constitutions. The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. Similarly, Article I, sections 1 and 26 of

---

4. The constitutional challenges raised by plaintiffs are not unique and, in fact, have previously been addressed by a number of federal courts. In *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), the Supreme Court rejected an equal protection challenge to an ordinance which banned all pushcart vendors from the French Quarter of New Orleans except those who had operated there for eight or more years. In *Hispanic Taco Vendors of Washington v. City of Pasco,* 994 F.2d 676 (9th Cir.1993), the Ninth Circuit upheld a vending ordinance which established new licensing fees, made licenses nontransferable, banned sales from vacant lots and imposed setback requirements against commerce clause, equal protection and due process clause challenges. Similarly, the Seventh Circuit has rejected both substantive due process and equal protection challenges to an ordinance which prohibited mobile food dispensers from selling on city streets between 8:00 a.m. and 4:00 p.m. during the school year, and required such vehicles to move a minimum distance of one block every ten minutes. *See Vaden v. Village of Maywood, Ill.,* 809 F.2d 361, 363–66 (7th

Cir.1987), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2489, 96 L.Ed.2d 381 (1987). *See also Lindsay v. City of Philadelphia,* 844 F.Supp. 229 (E.D.Pa. 1994) (holding that an ordinance which limited street vending in Center City Philadelphia to specific locations and required current vendors to apply and compete for those spots did not violate substantive due process or equal protection clauses of United States Constitution).

In each of these cases, the vendor plaintiffs contended that the subject restrictions imposed upon them would have the final effect of destroying their vending business. *See City of New Orleans,* 427 U.S. at 299 n. 2, 96 S.Ct. at 2514–15 n. 2 ("most of appellee's sales, particularly during the summer months, were made in the [now restricted area]"); *Hispanic Taco Vendors,* 994 F.2d at 679 ("[t]he vendors argue ... that the ordinance ... will force them out of business"); *Vaden,* 809 F.2d at 363 ("[b]ecause [the plaintiff vendor's] clientele consisted primarily of school children who purchased food at lunchtime and immediately after school, the [subject] ordinance virtually eliminated [her] vending business during school months").

the Pennsylvania Constitution entitle plaintiffs to equal protection of the laws.[5]

As with plaintiffs' substantive due process claims, plaintiffs' equal protection claims are subject to a rational basis review. Specifically, unless legislation establishes a classification that implicates fundamental rights or draws upon suspect classifications such as race, religion, or alienage, "economic and social legislation is subject to rational basis review, under which a law need only be rationally related to a legitimate state interest." *Tolchin v. Supreme Court of the State of New Jersey*, 111 F.3d 1099, 1113 (3d Cir. 1997) (citations and internal quotation marks omitted), *cert. denied*, —— U.S. ——, 118 S.Ct. 435, 139 L.Ed.2d 334 (1997). *See also Burlington Northern R.R. Co. v. Department of Public Serv. Regulation*, 763 F.2d 1106, 1109 (9th Cir.1985) ("The standard for judging the constitutionality of a statute . . . which regulates economic activity, is the same under the due process, equal protection or commerce clauses. Legislation will be upheld if it bears a rational relationship to a legitimate state interest.")

As discussed above, this Court has determined that the amendment to Ordinance No. 719 is rationally related to the legitimate governmental interests of raising revenue and controlling congestion and the flow of pedestrian traffic. For purposes of rational basis review, a rule need not be the least restrictive means of achieving a permissible end. So long as the legislature could rationally have decided that its action would further its goal, the Equal Protection Clause is satisfied. *Tolchin*, 111 F.3d at 1114. Accordingly, plaintiffs' equal protection claims are denied.

### C. *Plaintiff's procedural due process claim*

■ In Count II of their Complaint, plaintiffs contend that their procedural due process rights were violated when Dan Onorato, a member of both the Stadium Authority and the City of Pittsburgh Council, sponsored and voted in favor of amending Ordinance No. 719. Specifically, plaintiffs allege that these actions constituted an improper commingling of Onorato's administrative and prosecutorial duties:

> As a Stadium Authority Board member, Mr. Onorato participated in the administrative decision to remove plaintiffs from Three Rivers Stadium property. As a member of Pittsburgh's City Council, Mr. Onorato participated in the prosecutorial action to amend the City's vending ordinance so as to remove plaintiffs from Three Rivers Stadium property. This commingling of administrative functions by Mr. Onorato deprived plaintiffs of their procedural due process rights.

Brief in Support of Plaintiffs' Motion for Summary Judgment at pp. 5–6.

In support of their procedural due process claim, plaintiffs rely exclusively on the Pennsylvania Supreme Court's holding in *Lyness v. Commonwealth, State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992). In *Lyness*, the Court held that the revocation of a medical doctor's license violated his due process rights when the State Board of Medicine both initiated the investigation against the doctor and later acted as the ultimate factfinder in the disciplinary action. In so finding, the Court noted that "even an *appearance* of bias and partiality must be viewed with deep skepticism, in a system which guarantees due process to each citizen ." *Lyness*, 605 A.2d at 1207 (emphasis in original).

This Court, however, finds *Lyness* to be inapposite. In contrast to the present case, *Lyness* and the cases discussed therein involved situations wherein there was an improper commingling of *prosecutorial* and *adjudicatory* functions, that is, charges or allegations were initiated by an individual or multi-member entity that later acted as the

---

5. The Supreme Court of Pennsylvania has held that in analyzing the equal protection provisions of the Pennsylvania Constitution, courts are to apply the same standards used by the United States Supreme Court when reviewing a claim under the Fourteenth Amendment. *See Nicholson v. Combs*, —— Pa. ——, 703 A.2d 407, 412– 413 (Pa.1997) (*citing James v. Southeastern Transportation Authority*, 505 Pa. 137, 477 A.2d 1302 (1984)). Accordingly, this Court will discuss plaintiff's equal protection claims only in the context of the Fourteenth Amendment to the United States Constitution.

ultimate fact-finder against the charged individual. This situation is simply not present in the instant case.

Although Ordinance No. 719, both in its pre- and postamendment forms, certainly had an impact on the plaintiffs' desire to vend on Three Rivers Stadium property, this Court cannot conclude that its amendment constituted a prosecutorial action against plaintiffs. To adopt plaintiffs' rationale would be to hold that by sponsoring or voting in favor of legislation affecting an individual's interests, a legislator is engaging in prosecutorial functions against those interested individuals. The Court declines to adopt this position.

For the above reasons, the court finds that the plaintiffs have failed to proffer evidence sufficient to demonstrate a violation of their procedural due process rights. Accordingly, summary judgment in favor of defendants on this count is appropriate.

### D. *Plaintiffs' claims under § 1983*

In Count V of the complaint, plaintiffs set forth a cause of action under 42 U.S.C. § 1983. Section 1983 provides for the imposition of liability on any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *See* 42 U.S.C. § 1983.

■ It is well established that " § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (*citing Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2694–2695 n. 3, 61 L.Ed.2d 433 (1979) (internal citation marks omitted)). To state a claim under § 1983, a plaintiff must show both that: (1) offending conduct was committed by a person acting under color of state law; and (2) that such conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

Plaintiffs' section 1983 claim is based upon their contention that defendants deprived plaintiffs of their constitutional rights to due process and equal protection. *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at 19. Because this Court has found that plaintiffs have failed to demonstrate a violation of their due process and/or equal protection claims, plaintiffs' section 1983 claim must likewise fail.

### E. *Plaintiffs' Article II, section 1 claim under the Pennsylvania Constitution*

In Count VII of their complaint, plaintiffs allege that "the amendment of Ordinance No. 719 and its Amendment constitute an unlawful use of the City of Pittsburgh's police powers under Article II, section 1 of the Constitution of the Commonwealth of Pennsylvania." Complaint ¶ 57. Article II, section 1 of the Pennsylvania Constitution provides as follows: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."

■ Plaintiffs do not discuss this claim in their brief in support of their motion for summary judgment or in their brief in opposition to defendants' motion for summary judgment. Accordingly, the Court finds that summary judgment in favor of defendants on this claim is appropriate. *See Matthews v. Commonwealth Edison Co.*, 128 F.3d 1194, 1197–98 (7th Cir.1997) (defendant waived issue of disparate-impact analysis when he "mention[ed] the point in a sentence in his brief, but neither develop[ed] nor substantiate[d] it"); *Buckley Const. v. Shawnee Civic & Cultural Development Authority*, 933 F.2d 853, 855 n. 2 (10th Cir.1991) (affirming district court's dismissal of certain claims because those claims were not addressed in plaintiff's opposition to Rule 12(b)(6) motion).

### F. *Plaintiffs' antitrust claim*

■ Although count IV of plaintiffs' complaint asserts violations of "[s]ections 1 through 7 of the Sherman–Antitrust Act," complaint at ¶ 41, plaintiffs' brief makes it

clear that plaintiffs are proceeding only under section 1 of the Sherman Act, that is, 15 U.S.C. § 1.[6] *See* Brief in Support of Plaintiffs' Motion for Summary Judgment at pp. 17–19. Defendants contend that they are not liable on this claim because, *inter alia,* they are immune from anti-trust liability. For the reasons that follow, this Court agrees.

In *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), the United States Supreme Court held that federal antitrust laws were inapplicable when a state, acting as a sovereign, engages in an "act of government." *See City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 409, 98 S.Ct. 1123, 1134–35, 55 L.Ed.2d 364 (1978) (plurality) (*discussing Parker* and *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)). *Parker* immunity, however, does not automatically extend to the actions of state or municipal instrumentalities. *City of Lafayette,* 435 U.S. at 412, 98 S.Ct. at 1136. Rather, municipal and state agencies are immune from the antitrust laws only if the actions taken were "authorized by the State 'pursuant to state policy to displace competition with regulation or monopoly public service,' " that is, the municipality must be acting pursuant to a "clearly articulated" state policy. *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 38–39, 105 S.Ct. 1713, 1716, 85 L.Ed.2d 24 (1985) (*quoting City of Lafayette,* 435 U.S. at 413, 98 S.Ct. at 1136–37). It is not necessary, however, that the state statute granting power to a municipal or state agency "expressly state ... that the legislature intends for the delegated action to have anticompetitive effects." *Id.* at 43, 105 S.Ct. at 1719. An agency is acting pursuant to a clearly articulated state policy so long as the anticompetitive conduct is a foreseeable result of the authority granted by the state. *Id.* at 44, 105 S.Ct. at 1719.

*See also Yeager's Fuel v. Pennsylvania Power & Light,* 22 F.3d 1260, 1266–67 (3d Cir. 1994) ("[A] state policy need not be aimed at restraining competition for a person acting pursuant to that policy to be immune from antitrust liability.... [T]o satisfy the clear articulation requirement, a defendant need only show that 'the legislature contemplated the kind of action complained of.' ") (*quoting Hallie,* 471 U.S. at 44, 105 S.Ct. at 1719).

Applying these principles to the present case, the Court finds that defendants are immune from federal antitrust liability with regard to the amendment of Ordinance No. 719. First, the defendant Stadium Authority was created pursuant to the "Public Auditorium Authorities Law," 53 P.S. § 23841, *et seq.*[7] This law provides that any such authority

> shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purpose including, but without limiting the generality of the foregoing, the following rights and powers:
>
> * * *
>
> (h) To fix, alter, charge and collect rentals, admissions, license fees and other charges for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties, the payment of the principal of and interest on its obligations and to fulfill the terms and provisions of any agreements made with the purchasers or holders of any such obligations or with the incorporating county or city.
>
> * * *
>
> (j) To make contracts of every name and nature and to execute all instruments nec-

---

**6.** That statute states in pertinent part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal....

> 15 U.S.C. § 1.

**7.** The Public Auditorium Authorities Law authorizes the organization of entities such as defendant Stadium Authority,

> for the purpose of acquiring, holding, constructing, improving, maintaining and operating, owning, leasing, either in the capacity of lessor or lessee, public auditoriums, the purpose and interest of this act being to benefit the people of the Commonwealth by, among other things, increasing their commerce and prosperity and promoting their educational, cultural, physical, civic, social and moral welfare.

> 53 P.S. § 23845(A).

essary or convenient for the carrying on of its business.

53 P.S. § 23845(B).

Thus, in a general sense, the Pennsylvania legislature has vested discretion in its cities over the creation of public auditoriums [8] such as Three Rivers Stadium and granted cities broad powers in conducting their activities, which activities would include the sale of concessions. The fact that the Pennsylvania legislature contemplated that the sale of concessions on the property of such public auditoriums would be limited is evidenced by the Public Facilities Concession Regulation Act, 69 P.S. § 2501, *et seq.*, which provides in pertinent part as follows:

It is hereby determined by the General Assembly of Pennsylvania and declared as a matter of legislative findings that:

(1) It is and has been the policy of the Commonwealth to require and encourage public agencies[[9]] to own and operate a variety of public facilities for the conduct of public business, and for the health, education, protection, transportation, recreation, entertainment, and cultural advancement of the people of the Commonwealth.

(2) *It is and has been the policy of the Commonwealth to promote the public welfare by permitting the operation, within such public facilities, of various concessions to provide goods and services to the public.*

(3) *Due to the nature, configuration and location of many such public facilities, members of the public utilizing the same must either patronize the concessionaires operating therein or undergo great expense, inconvenience and hardship.*

* * *

69 P.S. § 2502 (emphasis added).

Even more specific evidence of the legislature's acknowledgment that the sale of concessions on public auditorium property would be limited is found in 69 P.S. § 2505(a), which states:

(a) Every public agency shall require that every contract entered into after the effective date of this act, granting any concession, license, permit or right to sell, lease, contract for, or otherwise make available for consideration, goods or services to the public in any public facility, contain provisions giving the public agency the right to regulate the kinds, quality and prices of such goods and services, upon such terms and conditions as may be appropriate.

Clearly, the Public Facilities Concession Regulation Act indicates that cities may enter into contracts with concessionaires to supply goods and services at public facilities, the result of which might logically be anticompetitive effects. An indication of state desire to abdicate in favor of municipal prescience is all that is required in order for immunity from antitrust laws to attach. *See Independent Taxicab Drivers' Employees v. Greater Houston Transportation Co.,* 760 F.2d 607, 610 (5th Cir.), *cert. denied, sub nom.,* 474 U.S. 903, 106 S.Ct. 231, 88 L.Ed.2d 230 (1985). Thus, this Court finds that defendants are immune from liability with regard to plaintiffs' antitrust claim and, accordingly, summary judgment in favor of defendants on this claim is granted.

## IV. *Conclusion*

For the above reasons, this Court finds that summary judgment in favor of defendants on all counts of plaintiff's complaint is

---

**8.** A "public auditorium" is defined by the Public Auditorium Authorities Law as:

any structure appropriate for large public assemblies, the holding of conventions, sporting tournaments, athletic contests and exhibitions, musical and dramatic performances and other business, social, cultural, scientific and recreational events and all facilities necessary or incident thereto, including provisions for adequate off-street parking. Nothing herein contained shall be construed to prohibit the constructing, on sites acquired adjacent to and in

connection with such structures and facilities, of improvements, buildings and other structures for the purpose of producing revenues to assist in defraying the costs of operation, maintenance, and debt service of the project.

53 P.S. § 23842(m).

**9.** "Public agencies" is defined within the Public Facilities Concession Regulation Act as, *inter alia,* "counties, cities, boroughs, townships, school districts, and all other governmental units and districts." 69 P.S. 2504(2).

warranted and that plaintiffs' request for a preliminary injunction must be denied.